IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**MICHELE T. WEISS,**

       Plaintiff,

vs.                                                          Civ. No. 01-1427 MV/DJS

**JO ANNE B. BARNHART,**
**Commissioner of Social Security,**

       Defendant.

### MAGISTRATE JUDGE'S PROPOSED FINDINGS
### AND RECOMMENDED DISPOSITION

      **THIS MATTER** comes before the Court upon Plaintiff's Motion to Reverse for Continuation of Benefits, or in the alternative, to Remand for a Rehearing. (Docket No. 8), filed June 25, 2002. The Commissioner of Social Security issued a final decision terminating benefits finding that Plaintiff's medical condition had improved. Having considered the Motion, the memoranda submitted by the parties, the administrative record and the applicable law, the court finds that the motion is not well taken.

### PROPOSED FINDINGS

### I.  PROCEDURAL RECORD

    1.    Plaintiff Michele T. Weiss filed an application for disability insurance benefits on December 5, 1979. Her application for benefits was approved December 24, 1979, based on

Listing 10.04, systemic lupus erythematosis (sic). Tr. 73. On October 7, 1998, it was determined that Plaintiff's disability ceased effective October 1, 1998.

2.      On November 4, 1998, Plaintiff filed a request for reconsideration. Tr. 79. Her request was denied on March 24, 1999. She filed a request for a hearing on April 2, 1999.

3.      After a hearing the ALJ issued a decision on September 13, 2000. The ALJ made the following findings according to the sequential evaluation set forth in 20 C.F.R. §404.1594(f): the claimant has not engaged in substantial gainful activity during the period under review; the claimant's alleged mental disorder is not severe; the severity of the claimant's impairments do not meet or equal a listed impairment having specifically reviewed section 11:00; the claimant underwent medical improvement as of October 1, 1998; since October 1, 1998, the claimant has retained a residual functional capacity for sedentary work; non-exertional factors have not significantly eroded this work capacity; and reference to Rules 201.18 and 201.21 of the Medical-Vocational Guidelines, directs a finding that, given the claimant's age, education, work experience and residual functional capacity, she is disabled. Tr. 15-22.

4.      The ALJ entered her decision on September 13, 2000. Thereafter, the Plaintiff filed a request for review. On November 27, 2001, the Appeals Council issued its decision denying request for review and upholding the final decision of the ALJ. Tr. 5. The Plaintiff subsequently filed her complaint for court review of the ALJ's decision on December 21, 2001.

5.      Plaintiff is 46 years old. She last worked in 1982 as an engineering aide. She completed high school as well as two years of college. Tr. 44.

## II.  STANDARD OF REVIEW

6.  The standard of review in this Social Security appeal is whether the Commissioner's final

decision is supported by substantial evidence and whether she applied correct legal standards. See Hamilton v. Secretary of Health and Human Services, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion." Andrade v. Secretary of Health and Human Svcs., 985 F.2d 1045, 1047 (10th Cir. 1993)(quoting Broadbent v. Harris, 698 F.2d 407, 414 (10th Cir. 1983)(citation omitted)). A decision of an ALJ is not supported by substantial evidence if other evidence on the record overwhelms the evidence supporting the decision. See Gossett v. Bowen, 862 F.2d 802, 805 (10th Cir. 1988).

7. After the Commissioner finds a claimant disabled, she "must evaluate [the claimant's] impairments from time to time to determine if [she is] still eligible for disability cash benefits." 20 C.F.R. § 404.1589. In a "continuing disability review", the Commissioner has the burden to show that the claimant can perform substantial gainful activity. Glenn v. Shalala, 21 F.3d 983, 987 (10th Cir. 1994). Further, no "inference as to the presence or absence of disability [is] drawn from the fact that the individual has previously been determined to be disabled." 42 U.S.C. § 423(f).

8. The Commissioner may find that a claimant is not longer entitled to disability benefits because her impairment has ceased, does not exist, or is no longer disabling, if such finding is supported by:

(1) substantial evidence which demonstrates that -
(A) there has been any medical improvement in the individual's impairment or combination of impairments (other than medical improvement which is not related to the individual's ability to work), and
(B) the individual is now able to engage in substantial gainful activity...
42 U.S.C. § 423(f).

### III. DISCUSSION

9. Plaintiff raises five arguments in support of her Motion. Plaintiff asserts that the ALJ inaccurately applied the medical improvement standard; the ALJ failed to give controlling weight to

the Plaintiff's treating physicians; the ALJ failed to assess the severity of the Plaintiff's depression and anxiety; the ALJ inappropriately applied the grids; and the ALJ failed to obtain vocational expert testimony.

<u>Medical History</u>.

10.     The Plaintiff has a history of lupus that involved the kidneys. She was experiencing severe vascular headaches associated with vasculitis. She required a great deal of medication to alleviate her pain. Her symptoms required hospitalization. In November of 1979, she had severe headaches and marked pedal edema in her legs up to her knees. An EEG showed cerebral dysfunction. She had a kidney transplant in 1982. The record shows that she had some follow-up treatment at Lovelace from 1996 to 1998. During this time Plaintiff's lupus remained stable as did her kidney function. She had few complaints with the exception of occasional fatigue and fluid retention. On September 12, 1997, more than a year before Plaintiff's disability benefits were ceased, Dr. Spalding found that she was "clinically stable" and was "essentially asymptomatic." Tr. 200-201. Dr. Ryan examined Plaintiff on March 12, 1998 and found that Plaintiff had "no evidence of active systemic lupus erythematosus clinically at this time." Tr. 197-98. On June 11, 1998, Dr. Ramdeen wrote that Plaintiff had no new complaints except "some fluid retention." Tr. 179-80. On February 16, 2000, Dr. Nolan wrote that Plaintiff's medical problems did not lead to significant physical disability that would limit her from being able to work  Tr. 279.

11.     Also at issue is Plaintiff's alleged mental impairment. The Plaintiff has not received any treatment for her alleged mental impairments. Her physicians had not prescribed any medication nor has she been referred to a psychiatrist or psychologist. Dr. Rene Gonzalez conducted a psychiatric examination on January 23, 1999. Though Dr. Gonzales reported only mild symptoms,

he found that plaintiff suffered from major depression. Tr. 16, 241.  At the request of Plaintiff's attorney she was evaluated by Anthony C. Traweek, Ph.D. on October 18,1999.  Dr. Kanig, a nephrologist submitted a report entitled Statement of Ability to do Work-Related Mental Activities dated November 11, 1999 and a letter dated June 18, 2000 stating she is disabled.  Tr. 277 and 315.

<u>Medical Improvement Standard.</u>

12.    Pursuant to 20 C.F.R. §404.1594(c)(1):

> Medical improvement is any decrease in the medical severity of impairment(s) present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled and is determined by a comparison of prior and current medical evidence which must show that there have been changes (improvement) in the symptoms, signs or laboratory findings associated with that impairment.

A review of Plaintiff's recent medical records, as discussed above, demonstrates that she does not suffer from significant functional limitations of lupus as of October 1, 1998 and later.  Plaintiff relies on a 1995 examination in which she complained that she had "a great deal of fatigue." Tr. 307.  However, this examination was three years prior to the termination.   More relevant as to whether Plaintiff's condition had medically improved as of October 1, 1998 are the records discussed above.  Plaintiff further relies on a report from Lenore A. Herrera, M.D., who performed a consultative exam on October 8, 1998.  Plaintiff refers to Dr. Herrera's report that that Plaintiff was chronically immunosuppressed and was a "high risk" for jobs that would expose her to infections.  However, the record does not indicate any other physicians cautioning the Plaintiff to avoid situations that would expose her to infection.  Moreover, Dr. Herrera's report supports the ALJ's decision that Plaintiff is no longer disabled.  She reports that the Plaintiff has no current joint problems and that she did not normally have problems with sitting, standing, or walking. Tr. 226.   Other than facial

hyperpigmentation and extreme ruddicness of complexion Dr. Herrera did not note any abnormal examination results.  The ALJ properly resolved the inconsistences in the report.  <u>Morgan v. Commissioner of Soc. Sec. Admin</u>, 169 F.3d 595, 603 (9th Cir. 1999)(existence of internal inconsistences in treating physician's reports is relevant evidence, and ALJ is responsible for resolving ambiguities in medical evidence.).

   13. Plaintiff's argument that the ALJ failed to compare Plaintiff's new residual functional capacity with her previous residual functional capacity is without merit.  Plaintiff was awarded disability benefits at step three, thus no residual functional capacity determination was previously made.  20 C.F.R. §404.1520(e)(f)(only if a decision cannot be made...on a claimant's medical facts alone will a determination of residual functional capacity be made).

   14. Plaintiff is correct that the ALJ clearly erred in citing the Listing for lupus as §11.00.  The correct Listing is §14.02.  The Court finds that this is harmless error because the medical evidence does not support finding that Plaintiff still has active lupus.  <u>Diaz v. Secretary of Health and Human Services</u>, 898 F.2d 744, 777 (10th Cir. 1990)(minimal error by the ALJ does not require reversal or remand.); <u>Bernal v. Bowen</u>, 851 F.2d 297, 302-303 (10th Cir. 1988)(no reversible error in ALJ's non-compliance with regulations and statute where claimant is not prejudiced); <u>Wilson v. Sullivan</u>, 930 F.2d 36, (10th Cir. 1991)(where sufficient evidence is present to sustain ALJ's decision under correct standard, remand not necessary).

   15. Plaintiff asserts  that Plaintiff meets the A criteria of Listing 14.02 because she has arthritis that is treated with steroid drugs.  However, a reading a reading of Listing 14.02 requires reference to Listing 1.00, musculoskeletal system.  This Listing requires the functional loss of the ability to ambulate effectively which has lasted or is expected to last for at least 12 months.  The

medical records do not support such a finding.

<u>Medical opinion of Plaintiff's treating physicians.</u>

16.   The ALJ must give significant weight to a treating physician's opinion if the evidence supports it. <u>See</u> <u>Castellano v. Secretary of HHS</u>, 26 F.3d 1027, 1029 (10th Cir. 1994); Social Security Ruling 96-2p.  However, a treating physician's opinion may be rejected if his conclusions are not supported by specific findings and if they are at odds with his own office records.  <u>Castellano v. Secretary of Health and Human Services</u>, 26 F.3d 1027, 1029 (10th Cir. 1991)  When the ALJ discounts a treating physician's opinion, he must give specific reasons. <u>Miller v. Chater</u>, 99 F.3d 972, 976 (10th Cir. 1996).   In this case,  Dr. Steven Kanig did not provide specific findings to support his opinion.

17.   Dr. Kanig is Plaintiff's nephrologist who provided follow-up treatment.  In his letter of June 2000 he stated that Plaintiff was disabled because she "sustained a flare of arthritis" in March of 2000 for which she had been referred to a rheumatologist, Dr. Carlson.  Dr. Kanig did not state what limitations, if any, he found that would  have prevented the Plaintiff from working.  Tr. 315. This statement was probably discounted by the ALJ.  Tr. 21.  When the opinion of a treating physician is unsupported by clinical data, as here, that opinion is properly discounted.  <u>Bernal</u>, 851 F.2d at 301 (when the opinion of a treating physician is unsupported by clinical data, as here, that opinion is properly discounted).

18.   Moreover, Plaintiff properly discounted the Statement of Ability to do Work-Related Mental activities completed by Dr. Kanig on November 22, 1999. Tr. 177-78.  Dr. Kanig stated that Plaintiff had "moderate/severe limitations" in the following areas:  "carry out very short and simple instructions, carry out detailed instructions, sustain an ordinary routine with special supervision, work

7

in coordination with or proximity to her without being distracted by them" and "make simple work-related decisions." Dr. Kanig, is a nephrologist. The record contains no treatment notes. Moreover, it appears that the limitations are based on Plaintiff's subjective statements to him. Tr. 178. The ALJ properly noted that Dr. Kanig did not refer the Plaintiff to a psychiatrist for evaluation or treatment. Further, more the ALJ properly noted the internal inconsistencies in the report. Tr. 17. Morgan, 169 F.3d at 603.

Plaintiff's mental impairment.

19. Plaintiff asserts that the ALJ erred in finding at step two that Plaintiff's alleged mental impairment was not severe. A review of her decision shows that the ALJ addressed the medical evidence related to Plaintiff's depression, anxiety and obsessive-compulsive behaviors and that the substantial evidence supports her opinion.

20. Dr. Gonzalez, who performed a consultative examination on January 23, 1999 and found that Plaintiff was able to handle structured, simple, nonstessful, low responsibility jobs with a great deal of supervision. Upon examination Dr. Gonzalez found that Plaintiff's memory was intact, her judgment was normal, she had no psychosis, she was able to relate well to others and she was able to take care of her basic activities of daily living and her own finances. Tr. 239-40. He did not, as the ALJ noted, explain the basis of his diagnosis of major depression when his examination indicated only a mild condition, at most. Tr. 16. The ALJ also noted that it did not appear that Dr. Gonzalez was aware of Plaintiff's daily activities. The Plaintiff works three to four hours a daily at a computer on a genealogy project which "appears to require more than simple thought processes." Id.

21. It is also worthy of note that Plaintiff says she became depressed and anxious since October of 1998, the month her disability ceased. Moreover, Dr. Gonzalez wrote that the Plaintiff

"also mentioned that she will not be able to work because she has problems waking up early, and she is not going to be able to handle a job for eight hours (the claimant was very sensitive about the issue of working, and this gives me the impression that she is not interested in working at all)."
Tr. 239.

The ALJ's explanation for discounting the limitations stated by Dr. Gonzales is proper and adequate.

22.     Additionally, the ALJ discussed the report of Anthony C. Traweek, Ph.D. Dr. Traweek found moderate limitations in the following areas: "maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, accept instructions and respond appropriately to criticism from supervisors," and "get along with coworkers or peers without distracting them or exhibiting behavior extremes." Tr. 175-76. The ALJ discounted Dr. Traweek's conclusion because of internal inconsistencies in his report. Tr. 17. On examination, Dr. Traweek observed Plaintiff's attention and concentration to be only mildly impaired. Moreover, the ALJ again noted that Plaintiff reported a fully daily regimen of working on the computer and cooking. Id.

23.     Finally, Plaintiff referred to a letter, dated March 6, 2001 from Karen Spingola, a nurse practitioner. Tr. 327-28. In her letter Ms. Spingola states Plaintiff cannot work. The letter does not provide any clinical findings, results of examination, diagnosis or treatment. 20 C.F.R. §404.1513(b). Moreover, a nurse practitioner is not an acceptable medical source. 20 C.F.R. §404.1513(a). Thus this letter was properly given little weight. Similarly, Plaintiff relies on a letter from Dr. Margaret Nolan dated February 16, 2000. Dr. Nolan is an internist who appears to rely somewhat on the report of Dr. Traweek. As throughout the record, this letter is conclusory and without any treatment notes or clinical data in support of blanket statements. Castellano, 26 F.3d at 1029.

9

24.     Moreover, Plaintiff's testimony supports a finding that Plaintiff's mental impairment is not severe.  Plaintiff testified that she had not sought treatment because "it's not that important, and since I have been at this kind of low grade level, it's almost like it's normal for me."  Tr. 56. She further testified that "[n]one of the doctors have dwelled into that."  Id.

The ALJ's use of the Grids; vocational expert testimony.

25.     As discussed above, the substantial evidence supports the ALJ's finding that Plaintiff does not have a severe non-exertional mental impairment.  Thus the use of the Medical-Vocational Guidelines (Grids) is appropriate.  Thompson v. Sullivan, 987 F. 1482, 1588 (10th Cir. 1993).

26.     Finally, Plaintiff argues that she did not meet all the criteria for the grids cited by the ALJ, specifically Rules 201.18 and 201.21.  The ALJ erred but it is harmless error.  The Commissioner concedes that Rule 201.21 does not apply.  Rule 201.18 does apply if it is used only as a frame work as Plaintiff has more education than shown in Rule 201.18.  The regulations permit the Grids to be used as a framework.  Appendix 2, Subpart P, Regulations No. 4, 200.00 (d).  It is clear from the ALJ's decision that she properly considered all the evidence in the record in making her decision. The substantial evidence supports the ALJ's finding that the Plaitniff can perform sedentary work.  Citing to the wrong grid is a "[p]rocedural imperfection that does not affect a party's substantive rights [and thus] is not a basis for reversal."  Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir. 1988).

27.     Finally, the ALJ did not err in not requiring vocational expert testimony in this matter. As discussed above, the substantial evidence supports the ALJ's finding that Plaintiff did not suffer from a mental impairment.

## RECOMMENDED DISPOSITION

I recommend finding that the ALJ applied the correct legal standards and her decision is supported by substantial evidence. The Plaintiff's Motion to Reverse and Remand Administrative Decision, filed June 25, 2002 , should be DENIED.

Timely objections to the foregoing may be made pursuant to 28 U.S.C. Sec. 636(b)(1)(C). Within ten days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to Sec.636(b)(1)(C), file written objections to such proposed findings and recommendations with the Clerk of the United States District Court, 333 Lomas N.W., Albuquerque, NM 87102. A party must file any objections within the ten day period allowed if that party wants to have appellate of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

 

_____
**Don J. Svet**
**UNITED STATES MAGISTRATE JUDGE**